# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON

Assigned on Briefs November 12, 2008

## LEROY BRIMMER v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Shelby County**
**No. 03-05597     John T. Fowlkes, Judge**

_____

**No. W2008-00738-CCA-R3-PC  - Filed December 16, 2008**

_____

The petitioner, Leroy Brimmer, appeals the denial of his petition for post-conviction relief from his conviction for first degree premeditated murder, arguing that he received ineffective assistance of trial counsel.  Following our review, we affirm the denial of the petition.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which JOSEPH M. TIPTON, P.J., and D. KELLY THOMAS, JR., J., joined.

R. Andrew Hutchinson and Matthew S. Lyons, Memphis, Tennessee, for the appellant, Leroy Brimmer.

Robert E. Cooper, Jr., Attorney General and Reporter; Lacy Wilber, Assistant Attorney General; William L. Gibbons, District Attorney General; and Rachel Newton, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

## FACTS

In 2005, the petitioner was convicted by a Shelby County Criminal Court jury of the first degree premeditated murder of his estranged girlfriend and was sentenced by the trial court to life imprisonment.  His conviction was affirmed by this court on direct appeal, and our supreme court denied his application for permission to appeal. State v. Leroy Brimmer, No. W2005-01932-CCA-R3-CD, 2006 WL 1205625 (Tenn. Crim. App. May 4, 2006), perm. to appeal denied (Tenn. Oct. 16, 2006).

The petitioner filed a *pro se* petition for post-conviction relief on March 19, 2007, and, following the appointment of counsel, an amended petition on August 9, 2007, raising claims of

ineffective assistance of trial and appellate counsel. At the evidentiary hearing, however, he abandoned his claim of ineffective assistance of appellate counsel, focusing instead on alleged deficiencies in trial counsel's performance. Specifically, he argued that trial counsel was ineffective for failing to investigate the effect the petitioner's medication had on his cognitive functioning, for failing to visit with him a sufficient number of times in order to prepare an adequate defense, and for failing to explain the ramifications of the petitioner's testifying in his own defense.

At the evidentiary hearing, the petitioner testified that he was represented at trial by two public defenders: senior trial counsel, who took over his case early in the pretrial process, and junior trial counsel, who was assigned to assist senior counsel shortly before the trial date. He complained that senior trial counsel did not consult with him very much, coming to see him in the jail only once every six months or so for twenty or thirty minutes at a time and visiting with him only once or twice in the courtroom. He said he both wrote and telephoned counsel a number of times but received only one or two letters in return and was able to speak to him only once. Furthermore, even when he was able to speak with counsel, he was unable to understand him or communicate effectively with him. The petitioner explained that he had had a "nervous . . . breakdown" and was on psychotropic medications, including Prozac, Risperdal, and Trazodone, from the first day he arrived at the jail until after his trial. He said the medications kept him sedated and seriously impaired his ability to recall information, including the events that led to his conviction. He thought he told counsel about the effect the medications were having on him, but he could not be certain.

The petitioner testified that when he asked senior trial counsel if his testifying at trial would hurt his case, counsel reassured him he would do fine. Counsel did not, however, explain his Fifth Amendment rights to him, and he did not recall his having ever discussed the details of his testimony. The petitioner said that counsel also failed to discuss any defense strategy with him and that he was under the impression that they were unprepared for trial. He stated that he told senior trial counsel about two witnesses he wanted to testify in his defense: Jennifer Ray and Kela Lee. Counsel, however, informed him that Ray, the victim's daughter, wanted nothing to do with the defense and that his investigator had been unable to locate Lee.

On cross-examination, the petitioner acknowledged that he received a mental evaluation prior to trial but said he thought the examiner treated it as "a joke." He insisted that trial counsel never explained the risks versus benefits of his testifying at trial and stated that had he known that his sedated state, caused by his medications, would allow the prosecutor to "chew [him] up like he did," he would not have taken the stand only to incriminate himself.

Senior trial counsel testified that he had been employed as an assistant public defender with the Shelby County Public Defender's Office since 1998. He said he was first assigned to the case upon the petitioner's arraignment in criminal court, which he believed occurred on October 1, 2003. His records reflected that during the course of his representation he met with the petitioner eleven times in jail, including three times in the week preceding trial, and on fifteen report dates, including some in which they engaged in lengthy discussions. He discussed with the petitioner, among other things, the facts of the case, the nature of the offense, the range of punishment, possible defenses and

witnesses, and the pros and cons of the petitioner's testifying in his own defense. The petitioner always appeared to understand him and actively engaged in dialogue with him about the case. The petitioner never gave any indication of mental impairment and said, when asked, that he had no history of mental illness. Nevertheless, as a precaution, trial counsel arranged for him to receive a mental evaluation, which resulted in the petitioner's being found competent, "not committable," and "able to confer and cooperate with defense counsel."

Trial counsel testified that he had many conversations with the petitioner about the advantages and pitfalls of testifying. He stated that the petitioner had given a very damaging statement to police in which he admitted to having purchased the murder weapon nine days before the shooting and having lain in wait outside the victim's residence on the morning of the shooting. Because the petitioner had no criminal record and therefore could not be impeached with any prior convictions, counsel informed him that the best way for him to explain his state of mind at the time of the shooting was to take the stand in his own defense. At the same time, however, he warned him that if he chose to testify, he would face vigorous cross-examination by a "seasoned veteran prosecutor":

> [W]e told [the petitioner] . . . if he cho[se] to testify that he would be vigorously cross-examined. But his story always stood the same. He never wavered in his story and as long as he was able to get that out there that, you know, that testifying would have its pitfalls but we could get something out of it. And being that this really was a state of mind case, not really a factual dispute or an identity case, to get into [the petitioner's] state of mind it would be advantageous for him to testify.

Trial counsel testified that the petitioner "was voir dired prior to testifying in open court on the record before we put him on the stand. . . . And like I said, [the trial judge] did voir dire him prior to him taking the stand in a jury-out hearing, a voir dire right before we put our proof on."

Trial counsel testified that he and co-counsel were fully prepared to try the case on the day of trial. He had contacted Jennifer Ray, who made it clear that she wanted nothing to do with the defense, and his investigator had twice interviewed Kela Lee, who was Ray's boyfriend at the time of the shooting. According to trial counsel, Lee was going to provide testimony about the relationship between the petitioner and the victim, particularly with respect to how the victim "had done [the petitioner] wrong" by cheating on him after he had supported her and put her through nursing school. However, neither the sheriff's department nor counsel's investigator was able to locate Lee for service of process at the time of trial. Nonetheless, trial counsel believed that he was able to elicit similar information through the cross-examination testimony of the victim's sister and the direct examination testimony of the petitioner's brother. He said that he disclosed to the petitioner prior to trial that he was unable to obtain service on Lee and offered to ask for a continuance, but the petitioner informed him that he was comfortable with proceeding with the witnesses they had.

On April 3, 2008, the post-conviction court entered an order denying the petition, finding, among other things, that the petitioner had failed to show either a deficiency in counsel's representation or prejudice. Thereafter, the petitioner filed a timely appeal to this court.

## ANALYSIS

### I. Post-Conviction Standard of Review

The post-conviction petitioner bears the burden of proving his allegations by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f) (2006). When an evidentiary hearing is held in the post-conviction setting, the findings of fact made by the court are conclusive on appeal unless the evidence preponderates against them. See Tidwell v. State, 922 S.W.2d 497, 500 (Tenn. 1996). Where appellate review involves purely factual issues, the appellate court should not reweigh or reevaluate the evidence. See Henley v. State, 960 S.W.2d 572, 578 (Tenn. 1997). However, review of a trial court's application of the law to the facts of the case is *de novo*, with no presumption of correctness. See Ruff v. State, 978 S.W.2d 95, 96 (Tenn. 1998). The issue of ineffective assistance of counsel, which presents mixed questions of fact and law, is reviewed *de novo*, with a presumption of correctness given only to the post-conviction court's findings of fact. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001); Burns v. State, 6 S.W.3d 453, 461 (Tenn. 1999).

### II. Ineffective Assistance of Counsel

To establish a claim of ineffective assistance of counsel, the petitioner has the burden to show both that trial counsel's performance was deficient and that counsel's deficient performance prejudiced the outcome of the proceeding. Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); see State v. Taylor, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (noting that same standard for determining ineffective assistance of counsel that is applied in federal cases also applies in Tennessee). The Strickland standard is a two-prong test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

466 U.S. at 687, 104 S. Ct. at 2064.

The deficient performance prong of the test is satisfied by showing that "counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland, 466 U.S. at 688, 104 S. Ct. at 2065; Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975)). The prejudice prong of the test is satisfied by showing a reasonable probability, *i.e.*, a "probability sufficient to undermine

confidence in the outcome," that "but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694, 104 S. Ct. at 2068.

## III. Claims of Ineffective Assistance

The petitioner contends on appeal that trial counsel was deficient for failing to meet with him a sufficient amount of time in order to prepare an adequate defense; for failing to investigate his mental health issues, including the psychotropic medication that impacted his ability to understand the charge against him or to participate meaningfully in his own defense; and for failing to explain the benefits and consequences of his testifying at trial. The petitioner further contends that these alleged deficiencies in counsel's representation prejudiced the outcome of his trial. Specifically, with respect to his last allegation of deficiency of counsel, the petitioner argues that had he been better informed about the risks of testifying, he would not have chosen to testify because he believed his testimony helped incriminate him. The State argues that the post-conviction court properly concluded that the petitioner received effective assistance of trial counsel. We agree with the State.

In denying relief on these claims, the post-conviction court accredited the testimony of trial counsel over that of the petitioner, noting that while the petitioner testified that his medications impaired his memory of meetings, trial counsel had records to support his account of the numerous meetings and discussions he held with the petitioner. The post-conviction court further noted that trial counsel's testimony that he informed the petitioner of the risks versus benefits of testifying in his own defense was corroborated by the petitioner's own testimony during voir dire by the trial court, in which he clearly stated that he was not on any medication that impaired his ability to understand, that he understood his Fifth Amendment rights and the pros and cons of testifying, and that it was his decision to testify. Finally, the post-conviction court found that trial counsel was not deficient for failing to call a witness who would have been hostile to the defense and one who could not be located, and that the petitioner failed to show any prejudice as a result of counsel's failure to call these witnesses. Accordingly, the court concluded that the petitioner had failed to meet his burden of proving his allegations by clear and convincing evidence.

The record fully supports the findings and conclusions of the post-conviction court. Trial counsel's testimony established that he met numerous times with the petitioner and fully discussed the case, including possible defenses, witnesses, and the advantages and disadvantages of the petitioner's testifying. Trial counsel questioned the petitioner directly about whether he had any mental illness and was assured by the petitioner that he did not. In addition, trial counsel had the petitioner mentally evaluated, with the result that he was found competent to stand trial and had no mental issues that would affect his defense. The petitioner has simply failed to show any deficiencies in counsel's representation or that he suffered any prejudice as a result of counsel's alleged deficiencies.

**CONCLUSION**

We conclude that the petitioner has not met his burden of showing that he received ineffective assistance of counsel. Accordingly, we affirm the denial of his petition for post-conviction relief.

_____
ALAN E. GLENN, JUDGE